GASKINS, J.
The plaintiff and the intervenors appeal from the trial court’s affirmance of the Shreveport City Council’s denial of a special exception use for the sale of alcohol to operate a package liquor, wine and beer store on Bert Kouns Industrial Loop in Shreveport. We affirm the trial court judgment denying the special exception use.
FACTS
The property at issue is undeveloped acreage located at 420 Bert Kouns Industrial Loop in Shreveport upon which Roland Toups is seeking to build a Thrifty Liquor store. The proposed store would sell package liquor of both low and high alcoholic content, including beer, wine, bourbon, scotch, whiskey and vodka; the facility would have a drive-thru window. The parcel of land is owned by Alex Mijal-is; Mary C. Mijalis; and Christopher De-mopulos, trustee of Christopher Trust and SSD Trust. It is located on the north side of Bert Kouns, approximately 600 feet west of Linwood Avenue.
The proposed liquor store site is near a Brookshire’s grocery store, a Raceway gas station (which is sometimes called Race-trac in the record), and a Shell (formerly Texaco) gas station, all of which are allowed to sell alcohol in varying degrees of alcoholic content pursuant to special exception uses. The record shows that Brook-shire’s sells beer, wine and high alcohol content wine. Raceway apparently sells beer, wine coolers, and wine. Shell primarily sells beer; however, some testimony indicated that it may also sell wine and wine coolers.
Mr. Toups filed an application with the Shreveport Metropolitan Planning Commission (MPC) to effectuate a change in the existing zoning of the property from R-A (residence/agriculture districts) to B-3 (community business districts). Following a public hearing on November 7, 2007, the MPC approved the zoning change by a vote of four to three.
Additionally, Mr. Toups filed an application with the Zoning Board of Appeals (ZBA) to allow special exception use for the sale of high alcoholic content beverages. The application specifically requested special exception use for package liquor, package beer, and package wine and beer. The ZBA unanimously approved the application on November 14, 2007, by a vote of six to zero.
However, the MPC and ZBA decisions were appealed to the Shreveport City Council by Steve Angelí, the pastor of operations of Calvary Baptist Church. Following a lengthy and well-attended public meeting on December 11, 2007, the city council voted to overturn both decisions.
Mr. Toups filed a petition in the district court for review of the city council’s votes to reverse the MPC and ZBA decisions. The property owners filed a petition of intervention, joining with Mr. Toups in seeking reversal of the city council’s ac *408 tions. The City of Shreveport answered, asserting that the city council's decisions to reverse the MPC and ZBA rulings were based on due consideration of the public health, safety and general welfare of the municipality.
A petition of intervention was filed by Calvary Baptist Church, Word of Faith Church International, and Christian Center of Shreveport. They asserted that they operated churches within close proximity to the property at issue and that they opposed the proposed rezoning of the area to allow the liquor store and granting of its application for special exception use.[1] However, their petition was subsequently dismissed pursuant to an exception of no right of action.
Trial and de novo review were held in the district court on November 25 and December 2, 2008. Testifying for the plaintiff and intervenors were Mr. Toups; Mr. Mijalis; Roy Jambor, the senior planner for the MPC; Charles Kirkland, the executive director of the MPC; Bernard Riley, a crime analyst for the Shreveport Police Department (SPD); Russell Collins, the SPD’s approving official for liquor licenses; James Gosslee, a real estate broker; and Byron Tindell, the district traffic operations engineer for the Louisiana Department of Transportation and Development (DOTD). The witnesses presented by the city were Mr. Angelí and David Martin, pastors associated with Calvary Baptist Church; Timothy Carscadden, the senior pastor of Christian Center of Shreveport; and Christine Carr, a resident of a subdivision located near the proposed liquor store site. The city also recalled Corporal Collins to obtain additional information about alcohol licenses.
On February 9, 2009, the trial court issued a written opinion in which it reversed the city council’s decision denying the rezoning of the property from R-A to B-3, but affirmed the city council’s decision denying the special exception use. On the rezoning issue, the trial court noted the trial testimony of Mr. Gosslee, the real estate broker, that most of the parcels fronting Bert Kouns Industrial Loop will be rezoned commercially from R-A to B-3, which is the highest and best use of the property; apparently many already have been rezoned. The court concluded that nonuniform zoning treatment and inconsistent use of police power, which were arbitrary and capricious and amounted to a violation of the owners’ property rights, had been proven. Accordingly, the city council’s rezoning decision was reversed.
As to the special exception use, however, the trial court found that the city council’s decision was not arbitrary, capricious or unreasonable. The court observed that while Brookshire’s, Racetrac and Shell had special exception uses to sell beer and wine, the proposed liquor store would sell such high alcohol package liquor as bourbon, vodka and rum. Furthermore, it would have a drive-thru service whereby a customer could buy a mixed drink with adhesive tape on the top and then reenter traffic near a church and a school. Like the city council, the court also made note of the “vehement” public citizen comments. The court found that the city council’s decision to overturn the ZBA ruling was “articulably consistent with promoting health, safety, morals and for the general welfare of the community,” pursuant to La. R.S. 33:4721 and its jurisprudence.
*409 Judgment in conformity with the trial court’s written opinion was signed on March 6, 2009.
The plaintiff and the intervenors appeal.
LAW

Statutory

The Louisiana Supreme Court, in City of De Ridder v. Mangano, 186 La. 129, 171 So. 826 (1936), gave a historical perspective of state law prior to and after the Twenty-first Amendment to the United States Constitution:
Before the advent of national prohibition, the retail liquor business in Louisiana was regulated, in all of its details, by a statute, Act No. 176 of 1908, known as the Gay-Shattuck Law. After national prohibition was abolished, the Legislature, instead of enacting another such statute as the Gay-Shattuck Law, left it to each parish and municipality to adopt its own regulations of the retail liquor business, by ordinances on the subject.
As to local regulatory ordinances pertaining to alcoholic beverages, La. R.S. 26:493 provides:
Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
“Alcoholic beverages” means any fluid or any solid capable of being converted into fluid, suitable for human consumption, and containing more than one-half of one percent alcohol by volume, including malt, vinous, spirituous, alcoholic or intoxicating liquors, beer, porter, ale, stout fruit juices, cider, or wine. La. R.S. 26:241(1). “Beverages of low alcoholic content” means alcoholic beverages containing not more than six percent alcohol by volume. La. R.S. 26:241(l)(a). “Beverages of high alcoholic content” means alcoholic beverages containing more than six percent alcohol by volume. La. R.S. 26:241(l)(b).[2]
Any use engaged in the sale and/or dispensing of alcoholic beverages of high or low alcoholic content is “a special exception use requiring the approval of the zoning board of appeals and subject to such terms and conditions as the board may specify to assure compatibility with existing or planned development and to protect adjacent or nearby property and uses.” Shreveport Code of Ordinances Section 106-1127. The terms and conditions may specify such things as “frequency, duration, or hours of operation; additional screening, setbacks, parking, landscaping or other site improvements; alcoholic content; method or type of service (e.g., drive-thru, with meals only, package sales only, etc.), designated service areas within a building or site.” Shreveport Code of Ordinances Section 106-1127(1).
*410 On the subjects of land use and zoning, La. Const. Art. 6, § 17 states:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
In pertinent part, La. R.S. 33:4721 sets forth the zoning powers of municipalities as follows:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict ... the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
Pursuant to Shreveport Code of Ordinances Section 106-48, an appeal may be taken by any person aggrieved by a decision of the board of appeals for a review by the city council of such decision. After such review, the city council shall either affirm, modify, reverse or remand the decision rendered by the board of appeals. Any person aggrieved by the decision of the city council shall have the right to appeal the decision to a court of appropriate jurisdiction.

Jurisprudence

The retail liquor business is not one which any one may engage in as a matter of right. It is a privilege, for which a special license may be required, and which must be conducted according to the rules and regulations prescribed by the authority granting the license. All that the fundamental law demands in that respect is that the regulations prescribed shall have some relation to the welfare of the community. City of De Ridder v. Mangano, supra.
Due to the nature of the intoxicating liquor business, the governing authorities may impose regulations on it more stringent than other businesses. City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954).
In State v. Larson, 94-1237 (La.4/10/95), 653 So.2d 1158, where the constitutionality of a law banning nude dancing at licensed establishments serving alcohol was at issue, our court made the following observations about alcohol:
First, alcohol is an inherently dangerous substance which produces a number of harmful secondary effects such as alcoholism and drunk driving.... The state has a great interest in the regulation of alcoholic beverages — and the establishments in which they are sold — to prevent adverse effects on public health, welfare, and morals.
Second, the Supreme Court contemplates that the illegal sale and consumption of alcohol is a matter to be treated as a public welfare or regulatory offense. In any event, the sale and consumption of alcohol is subject to a complex regulatory scheme. [Citations omitted.]
*411 Zoning is a legislative function, the authority for which flows from the police power of governmental bodies. King v. Caddo Parish Commission, 1997-1873 (La.10/20/98), 719 So.2d 410; Prest v. Parish of Caddo, 41,039 (La.App.2d Cir.6/2/06), 930 So.2d 1207. Courts will not interfere with this legislative prerogative unless the zoning decision is palpably erroneous and without any substantial relation to the public health, safety or general welfare. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
The zoning board has the power to grant “special use” permits. These permits allow a landowner to vary from the strict terms of a zoning ordinance. King v. Caddo Parish Commission, supra. In Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982), the Louisiana Supreme Court noted that special uses had been defined as a:
group of uses neither absolutely permitted as of right nor prohibited by law. They are privileges, in a sense, which must be applied for and approved by some designated governmental body authorized to condition the grant of permission based on a number of relevant land use considerations. Such uses of property are permitted uses, generally compatible with the zoning district but not at every location therein nor without certain standards or other requirements being met. P. Rohan, 6 Zoning and Land Use Controls § 44.01 (1981).
The procedure for issuing special use permits must be sufficiently definite to notify landowners of their right to request such a permit. King v. Caddo Parish Commission, supra. In addition, the standards for granting a special use permit must ensure equal treatment for all applicants to prevent the board of zoning appeals from exercising their power arbitrarily. King v. Caddo Parish Commission, supra. Special use classifications are entitled to the same standard of review as other zoning enactments. Morton v. Jefferson Parish Council, supra.
The property owner has the burden to establish by a preponderance of evidence that the decision to deny the special exception has no substantial relationship to public health, safety, morals or general welfare of the municipality. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
A prima facie presumption of validity attaches to zoning board actions. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the board was arbitrary and capricious or abused its discretion. Clark v. City of Shreveport, 26,638 (La.App.2d Cir.5/10/95), 655 So.2d 617; Papa v. City of Shreveport, 27,045 (La.App.2d Cir.9/29/95), 661 So.2d 1100, writ denied, 95-2544 (La.1/5/96), 666 So.2d 295. Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.
The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra.
Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute nonuniform application of zoning ordinances that is arbitrary and unreasonable. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.
The terms “arbitrary and capricious,” when used in this type of situation, mean *412 wilful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. On the other hand, when there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though one may believe that an erroneous conclusion has been reached. Prest v. Parish of Caddo, supra.
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and is therefore a taking of property without due process of law. Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990); King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra.
A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. King v. Caddo Parish Commission, supra.
Whenever the propriety of a zoning decision is debatable, it will be upheld. Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra.
In determining the reasonableness of the city council’s decision, the appellate court must review the opinions and concerns raised at the public hearing, as well as the testimony presented at trial. Expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what may benefit the public good. Prest v. Parish of Caddo, supra.
ZBA HEARING
At the ZBA public hearing on November 14, 2007, Mr. Toups addressed the board in support of his application for a special exception use; approximately 105 persons stood in support of the application. After Mr. Angelí spoke against the application, 13 people stood in opposition. Five of them stated their opposition on the record; according to the minutes, they cited as their concerns “curb cutting, saturation, lower property value, danger to lives, children’s safety, close proximity to church, drunk drivers, traffic increase, etc.” However, on the traffic issue, it was noted that the applicant and the current property owners had made adjustments suggested to improve road access and that DOTD had no problem with the access management plan proposed by the applicant. The application was approved by a vote of six to zero.
In its land use report, the ZBA noted that Raceway and Brookshire’s both had approval for package sale of wine and beer, wine being considered a high alcoholic content beverage, while the Shell station had approval for packaged sales of beer and wine coolers, which are considered low alcoholic content beverages. It also stated that there were no protected uses (e.g., churches and schools) within 300 feet of the proposed Thrifty Liquor site.[3]
CITY COUNCIL MEETING
The record indicates that the portion of the December 11, 2007, city council meeting addressing the Thrifty Liquor issue lasted about three and a half hours. Seven individuals spoke in favor of Thrifty Liquor’s proposed location. The proponents cited Thrifty Liquor’s role as a “good neighbor” in the areas where its *413 stores are located, its financial and charitable contributions to the community, and the many other services its stores provide, such as Western Union, utility bill payment, etc. They also noted the commercial development of Bert Kouns and the fact that the area around the parcel in question already contains three special exception uses. Mr. Toups emphatically emphasized that selling alcohol is a legal business.
Sixteen individuals, including three pastors, addressed the city council in opposition. Also present was a civics class from Calvary Baptist Academy. Among the opponents’ reasons for objecting to the proposed location of the Thrifty Liquor store were increased crime and traffic, drunk drivers, and the nearby locations of the school and churches.
TRIAL TESTIMONY
The witnesses who testified in opposition to the liquor store location had already expressed their views at the city council meeting. The proponents presented testimony detailing the efforts to develop the Bert Kouns area and the measures taken by Mr. Toups to resolve traffic matters. Mr. Tindell from the DOTD testified that he did not believe the proposed store would significantly adversely affect traffic. Corporal Collins, the liquor license approving official for SPD, indicated that he saw no particular problems from a crime perspective.
DISCUSSION
As no appeal was taken from that portion of the trial court’s judgment, the rezoning of the property from R-A to B-3 is not an issue” before this court. The basic issue we must resolve on appeal is whether the city council’s decision to deny issuance of a special exception use permit for the sale of “package liquor, wine and beer” at the proposed Thrifty Liquor store was arbitrary and capricious.[4] To do so, we consider whether the city council’s action was unreasonable under the circumstances and bore no relation to the health, safety, or general welfare of the public.
In determining the reasonableness of the city council’s decision, we have reviewed the opinions and concerns asserted at the council meeting and the trial testimony. In particular, the opponents to the liquor store were concerned by its proposed location close to Calvary Baptist Church and its school and the ensuing traffic ramifications. While the proposed location is well beyond the 300-foot zone established in the ordinance and statutes prohibiting the sale of alcohol near such facilities, this fact alone does not mean that their opinions should be totally discounted as irrelevant. The presence of the school means that the area, particularly the intersection of Bert Kouns and Linwood, is traveled by many new and inexperienced teenage drivers.
The evidence demonstrates that the other three stores that sell alcohol in the same area have the current ability to sell only beer and wine whereas the liquor store would also sell “hard liquor,” like bourbon, vodka and rum. Furthermore, unlike the other stores, the main commodity sold at Thrifty Liquor is alcohol. Additionally, the Thrifty Liquor store would have a drive-thru window where drinks such as frozen daiquiris sealed only by tape could be purchased by a driver who then reenters traffic. These factors, combined with the presence of novice teen *414 drivers from Calvary Baptist Academy, increase the likelihood of traffic accidents in the immediate area. This is particularly true since the intersection at Bert Kouns and Linwood appears to be the primary ingress and egress for the school.
We note that no one has the inherent right to sell alcoholic beverages. The city of Shreveport, upon a vote of its electors, could prohibit the sale of alcohol altogether. Even though alcoholic beverages are sold in Shreveport, the city has the right to prescribe rules and regulations regarding the procurement of a liquor license. The right to obtain the license is not one that flows just from having the proper commercial zoning. The business must have the proper zoning and be granted a special exception use. The authority for such special exception use is expressly granted to the city by La. R.S. 26:493. Heightened scrutiny from this regulatory authority is present because of the concern that the sale of alcoholic beverages has an effect on the public health, morals, safety and peace of an area. This examination is appropriate given the fact that alcohol serves as the nexus of many acts prohibited in the Louisiana Criminal Code.
Like the trial court, we are compelled to find that the city council’s decision to deny Thrifty Liquor a special exception use in the instant case was articulably consistent with promoting health, safety, morals, or the general welfare of the community as set forth in La. R.S. 33:4721. As a result, we hold that the city council’s decision was not unreasonable; therefore, it was not arbitrary or capricious.
CONCLUSION
The trial court judgment affirming the city council’s denial of a special exception use for the proposed Thrifty Liquor store on Bert Kouns is affirmed. Costs of this appeal are assessed to the appellants.
AFFIRMED.
LOLLEY, J., dissents with written reasons.

. The record indicates that the nearest drive for the closest church, Calvary Baptist Church, is at least 1,581 feet away from the nearest property line for the proposed liquor store site.

. The same definitions for these terms are also utilized in Section 10-1 of the Code of Ordinances for the City of Shreveport.

. Section 10-82 of the Code of Ordinances for the City of Shreveport generally prohibits the sale of alcoholic beverages within 300 feet or less of playgrounds, churches, synagogues, full-time day care centers, public libraries or schools. See also La. R.S. 26:81 and 26:281.

. Although some language in the jurisprudence refers to the judicial review of the action by the "zoning board,” in the context of the instant case, it is clear that the "zoning board" whose actions are being reviewed is the city council, not the ZBA.