JOY COSSICH LOBRANO, Judge.
|, Plaintiffs, Dr. David Millaud and C & M Surgical Group, appeal the May 23, 2013 trial court judgment affirming the December 12, 2011 decision of the Board of Zoning Adjustments (“BZA”). The BZA decision denied plaintiffs’ appeal of the August 12, 2011 decision of the City of New Orleans Department of Safety and Permits, which held that property owned by plaintiffs at 3670 Gentilly Boulevard in New Orleans lost its nonconforming use status due to plaintiffs’ failure to reestablish business operations at that location prior to August 29, 2007, or two years following Hurricane Katrina.
In Civil District Court for the Parish of Orleans, plaintiffs filed an appeal and/or writ of certiorari of the ruling of the August 12, 2011 ruling of the Department of Safety and Permits regarding the status of the Gentilly Boulevard property. According to plaintiffs, the pi’operty at issue is zoned as “RS-1 Single Family Residential District,” but was previously granted nonconforming use status when a law office was operated on the property for many years prior to plaintiffs’ acquisition of the property in 2001. The Department of Safety and Permits ruled Lthat because the property was not reestablished prior to August 29, 2007, two years after the landfall of Hurricane Katrina, the nonconforming use status of the property was lost and the property can only be used from the date of the ruling forward for residential purposes. Plaintiffs asked the Civil District Court to set aside the ruling of the Department of Safety and Permits.
Plaintiffs further alleged that legislation enacted in 2006 following Hurricanes Katrina and Rita only required that the property owner initiate the process of rebuilding within a certain time period in order to retain the nonconforming use status of a property. Specifically, plaintiffs cite La. R.S. 33:4882, which provides that a property would not lose its nonconforming use status for two years following Hurricane Katrina if, because of that storm, the property was vacant or operations normally carried on in that location were temporarily discontinued. Plaintiffs contend that Dr. Millaud began repairing the damages sustained to the property as a result of Hurricane Katrina within the two-year period set forth in La. R.S. 33:4882, and, therefore, preserved the nonconforming *1291 use status of the property, where he intends to operate an oral surgery practice.
In opposition to the plaintiffs’ appeal of the ruling of the Department of Safety and Permits, the City of New Orleans argued that the Department correctly found that the property at issue lost its nonconforming use status due to plaintiffs’ failure to reestablish the property prior to August 29, 2007. Contrary to plaintiffs’ claim that Dr. Millaud began repairing the damages sustained as a result of | (¡Hurricane Katrina within the two-year period set forth in La. R.S. 33:4882, the City alleged that the plaintiffs did not even apply for a restoration permit before August 29, 2007, much less start business operations prior to that date.
Following a hearing, the trial court rendered judgment on November 15, 2011, stating that it was not ruling on the appeal and/or writ of certiorari filed by plaintiffs. Instead, the trial court directed plaintiffs to exhaust all administrative remedies by appealing and/or applying to the City of New Orleans BZA. Following a hearing, the BZA denied plaintiffs’ appeal of the Department of Safety and Permits’ decision holding that plaintiffs’ property lost its nonconforming use status.
On May 29, 2012, a petition for intervention was filed by Mr. and Mrs. John D. Lambert, Jr., Mayor and Mrs. Sidney Bar-thelemy, and Dr. and Mrs. C. Bernard Parent. The parties filing the petition for intervention identified themselves as residents of the Gentilly area who own homes in close proximity to the property at issue in this matter. The trial court allowed the petition for intervention to be filed, and ordered that the parties filing the petition be allowed to intervene as party defendants with the City of New Orleans.
Plaintiffs subsequently filed an amended petition and appeal, and petition for writ of certiorari. One of the allegations in the amended petition is that on September 20, 2006, Dr. Millaud obtained a permit from the Department of Safety and Permits to make repairs to his property. They further alleged that from September 2006 to October 2008, Dr. Millaud made repairs to the property, |4including renovating the property in order to convert it to a dental office. The amended petition stated that on October 2, 2008, the New Orleans City Council reaffirmed its 2001 decision to allow the nonconforming use status of the property. However, later that same month, the Department of Safety and Permits informed Dr. Millaud that the property had lost its nonconforming use status and could not be used as a dental office. Plaintiffs alleged that under City Comprehensive Zoning Ordinance (“CZO”) Section 13.3.2, the policy of the Department of Safety and,Permits is that a person had two years to obtain a permit after Hurricane Katrina, or until August 29, 2007, and then had one more year to complete repairs on the property, or until August 29, 2008. They further alleged that the City’s policy was that if repairs were ongoing as of August 29, 2008, a person would be allowed to continue with repairs beyond August 29, 2008 to restore a property and maintain nonconforming use status. Plaintiff alleged that repairs to the property were ongoing when the Department of Safety and Permits informed Dr. Millaud that the property lost its nonconforming use status. Dr. Millaud alleged that at that time, he ceased repairs to the property to avoid civil and criminal penalties.
Following a hearing, the trial court rendered judgment on May 23,2013, affirming the December 12, 2011 decision of the BZA denying plaintiffs’ appeal of the August 12, 2011 decision of the Department of Safety and Permits that the property at issue lost its nonconforming use status due to plaintiffs’ failure to reestablish business opera *1292 tions at that location prior to August 29, 2007. Plaintiffs subsequently filed a motion for new trial, which was denied by the trial court on [¿June 5, 2013. Plaintiffs now appeal the trial court’s judgments of May 23, 2013 and June 5, 2013.
On appeal, plaintiffs present two assignments of error:
1) The trial court erred by depriving Dr. Millaud of his vested property interest in the Gentilly building after approving the nonconforming use status and issuing permits, then rescinding approval to renovate; and
2) The trial court erred by misapplying the language of the applicable zoning ordinance, the practice of the City enforcing that ordinance, and the applicable jurisprudence that allows retention of nonconforming use if work is ongoing under a valid building permit.
Before addressing the plaintiffs’ assignments of error, we must first address the motion to dismiss plaintiffs’ appeal due to prescription filed by the intervenors in this matter. In this motion, the intervenors assert that the BZA denied plaintiffs’ appeal on December 12, 2011, but plaintiffs’ amended petition seeking review of that decision was not filed until August 3, 2012, well beyond the thirty-day period mandated by La. R.S. 33:4727 for an appeal of a BZA decision. Plaintiffs opposed the motion to dismiss, citing La. C.C.P. article 1094, which states: “An intervenor cannot object to the form of the action, to the venue, or to any defects and informalities personal to the original parties.”
As noted by this Court, “[a]n intervenor takes the proceedings as he finds them.” Leger v. Kent, 01-2241, p. 4 (La.App. 4 Cir. 4/24/02), 817 So.2d 305, 308, citing La. C.C.P. article 1094 and Taylor v. Tulane University of Louisiana, 97-0977 (La.App. 4 Cir. 9/17/97), 699 So.2d 1117. The defendant in this case, the City of New Orleans, did not raise the exception of prescription in the trial court or at the appellate level. Because this was a defect personal to the original parties, | (¡La. C.C.P. article 1094 prohibits the interve-nors from raising the exception of prescription in this matter. For that reason, the intervenors’ motion to dismiss appeal due to prescription is denied.
In addition to the intervenors’ motion to dismiss the plaintiffs’ appeal, the plaintiffs also filed an exception of prescription to the petition for intervention. However, because we are affirming the trial court judgment and upholding the denial of plaintiffs’ appeal of the BZA decision for reasons stated below, the issue of whether the petition for intervention is prescribed is moot and need not be addressed.
Turning now to the assignments of error raised by plaintiffs, we find no merit in plaintiffs’ arguments that the trial court misapplied the law in this case, or erred in its judgment upholding the decision of the BZA. The standard for reviewing decisions of the BZA was recently summarized in Ellsworth v. City of New Orleans, 13-0084 (La.App. 4 Cir. 7/31/13), 120 So.3d 897, as follows:
The jurisprudence has recognized that “the decisions of the BZA, while subject to judicial review under La. R.S. 33:4727(e), are subject to a presumption of validity and are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion.” French Quarter Citizens For Preservation of Residential Quality, Inc. v. New Orleans City Planning Comm’n, 99-2154, p. 3 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 18-19 (citing Curran v. Board of Zoning Adjustments, 90-1441 (La.App. 4 Cir. 04/16/91), 580 So.2d 417, 418; Lake Forest Inc. v. *1293 Board of Zoning Adjustments of City of New Orleans, 487 So.2d 138, 135 (La.App. 4th Cir.1986); Cross v. City of New Orleans, 446 So.2d 1253, 1255 (La.App. 4 Cir.1984)). The jurisprudence has further recognized that “[t]he reviewing court may not simply substitute its own judgment for that of the BZA.” Id. The jurisprudence has still further recognized that it “ ‘is not within the province of the appellate court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public.’ ” Toups v. City of Shreveport, 10-1559, pp. 5-6 |7(La.3/15/ll), 60 So.3d 1215, 1218 (quoting TSC, Inc. v. Bossier Parish Police Jury, 38,717 (La.App. 2 Cir. 7/14/04), 878 So.2d 880).
Id. at 6-7,120 So.3d at 902.
CZO Section 13.2.1 provides that “the burden of proof to establish the existence and retention of a nonconforming use shall be on the property owner of the building or land claiming retention or said nonconforming use by clear and convincing evidence.” In reasons for judgment, the trial court cites CZO Section 13.3.2, under the category of “Destruction of Nonconforming Use,” which provides as follows:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of the issuance of the restoration permit unless extensions are approved by the Board of Zoning Adjustments.
The trial court also cited La. R.S. 33:4882, enacted in 2006, which provides, in pertinent part:
Notwithstanding any provision of law or municipal or parish ordinance or resolution to the contrary, the governing authority of any municipality or parish and any agency of any such municipality or parish shall not allow and shall not cause any building or land to lose its nonconforming use status because, during all or part of the period of August 29, 2005, through August 28, 2007, as a result of damage caused by Hurricane Katrina or Hurricane Rita, it is temporarily vacant or operations normally carried on in such building or on such land have been temporarily discontinued.
Both CZO Section 13.3.2 and La. R.S. 33:4882 were correctly applied by the trial court in this case. Plaintiffs’ original and amended petitions describe the property at issue as having sustained significant damage from Hurricane Katrina U(the amended petition states that the property was flooded). Plaintiffs’ brief also states that flooding resulting from Hurricane Katrina damaged much of the renovation work that Dr. Millaud had begun prior to the storm. As such, plaintiffs admit that there was at least destruction of the property “in part” as a result of the storm, thereby triggering the rules for restoration set forth in CZO Section 13.3.2. Furthermore, by all accounts, the property was temporarily vacant as a result of damage caused by Hurricane Katrina. Therefore, the provisions of La. R.S. 33:4882 also apply.
We find no merit in plaintiffs’ argument that Dr. Millaud is being deprived of a vested property right because he obtained a permit and had commenced renovation work on the property when the City determined that the property had lost its nonconforming use status. Plaintiffs rely on the case of St. Raymond v. City of New Orleans, 99-2438 (La.App. 4 Cir. 5/17/00), 769 So.2d 562, in support of this argument. We find that the plaintiffs’ reliance on the St. Raymond case is misplaced. Nothing in that decision relieves a property owner of his obligation to comply with the timeta *1294 bles established by the City’s zoning ordinances and applicable statutes.
As the trial court noted, on September 20, 2006, Dr. Millaud obtained a permit for electrical work on the property at issue. This Court has stated that “reading [La. R.S.] 33:4882 in connection with BZA [Section] 13.3.2,” a property owner had “two years to apply for a restoration permit and one year to complete repair.” Joubert v. City of New Orleans, 11-0854, p. 4 (La.App. 4 Cir. 1/11/12), 81 So.3d 994, 996-97. While the September 20, 2006 restoration permit was obtained by plaintiffs during the two-year period authorized by La. R.S. 33:4882, its issuance started the clock on the one-year deadline of CZO Section 13.3.2 for | restoration work to be completed or for an extension to be obtained by a property owner. We agree with the trial court that the plaintiffs had until September 20, 2007 to reestablish a business operation at the property, and not until August 28, 2007 as determined by the Department of Safety and Permits. Nonetheless, the record is clear that restoration of plaintiffs’ property was not completed within one year of the issuance of the September 20, 2006 permit, and business operations were not reestablished by that date. Furthermore, there is no evidence in the record that plaintiffs ever requested an extension from the BZA, as allowed under CZO Section 13.3.2.[1] Based on these facts, the trial court affirmed the BZA’s December 12, 2011 decision that plaintiffs’ property lost its nonconforming use status. We affirm this decision by the trial court based on our conclusion that the BZA’s decision was not arbitrary, capricious or an abuse of discretion. We also find no error in the trial court’s denial of plaintiffs’ motion for new trial.
For the reasons stated above, the trial court judgments of May 23, 2013 and June 5, 2013 are affirmed. The intervenors’ motion to dismiss plaintiffs’ appeal is denied.
JUDGMENTS AFFIRMED; MOTION TO DISMISS APPEAL DENIED.

. This Court has also noted that the BZA is authorized to grant additional extensions to a restoration permit beyond the initial two-year period of CZO Section 13.3.2. See Williams v. Parish of St. Bernard., 10-0397, p. 9 (La.App. 4 Cir. 10/13/10), 49 So.3d 520, 527.