JOY COSSICH LOBRANO, Judge.
I,Mary Patricia O’Brien, (“O’Brien”), challenges a decision by the City of New Orleans Board of Zoning Adjustments, (“BZA”), which granted a zoning variance to her neighbor, Matthew Osborne (“Osborne”), allowing him to reconstruct a double dwelling on a lot,that is 500-square feet undersized for a two-family home under current zoning guidelines. The BZA found that Osborne had met the applicable requirements for the grant of the variance, and the district court found that the BZA was not arbitrary or capricious in making this finding. For the reasons which follow, we affirm the ruling of the district court.
In September 2013, Osborne purchased a house on North Derbigny Street in New Orleans. The house was a two-family structure on a 3,100 square' foot lot which had been built well before the current zoning rules were adopted. The neighborhood is zoned RD-3 (two-family district). The house had been vacant for several years, and Osborne originally intended to renovate it. However, because of the condition of the building, it was necessary to demolish the existing structure in order to reconstruct a new building, with a virtually identical footprint, in its place.
In April, 2014, Osborne filed a request for a 500-square foot variance because the applicable City of New Orleans Comprehensive Zoning Ordinance | a(“CZO”) article requires a two-family structure to have a lot area of 3,600 square feet.[1] On July 14, 2014, a hearing was held before the BZA. Neighbors, including Appellant O’Brien, appeared in opposition to the application, challenging Osborne’s ability to meet the mandatory requirements for a zoning variance as set forth in the CZO. The BZA granted the variance over their objections, agreeing with the recommendation in its staff report that Osborne had met the applicable CZO requirements for a variance. Among other things, the staff report identified 19 other two-family structures on lots of 3,100 square feet in the immediate vicinity, including a dozen on Osborne’s block. It also identified two other similar variances, including a recent variance authorizing a duplex on a lot of less than 2,400 square feet.
Based on this information and other facts cited in its report, the BZA staff report concluded that to treat Osborne’s property differently from the surrounding *740 neighborhood would work an undue hardship in this case, and recommended that the minor variance be approved. Adopting the findings in the staff report, the BZA granted the variance. On August 12, 2014, O’Brien filed a timely Petition for a Writ of Certiorari and Review in the Civil District Court for the Parish of Orleans challenging the BZA’s decision.
Following a hearing on the writ application, the district court rendered judgment on November 10, 2014 affirming the decision of the BZA and upholding the grant of the variance. In its Reasons for Judgment, the district court noted, inter alia, that the property contained a two-family dwelling at the time Osborne purchased it, that a variance would not have been necessary had Osborne decided |sto remodel instead of rebuild, and that demolition and reconstruction of a substantially similar structure were necessary only because of the dilapidated condition of the existing structure.
Following entry of Judgment on December 24, 2014, O’Brien filed the instant appeal. O’Brien argues that the BZA and the district court erred in granting the variance because Osborne did not satisfy the nine requirements set out in CZO, § 14.6.4. O’Brien also contends that the district court did not recognize the CZO’s distinction between renovation and reconstruction as applied to nonconforming structures and that it erred in concluding that “a building’s shortcomings on area or land does not constitute a nonconforming use.” She further argues that the BZA and the district court erred in applying equitable principles in the face of positive law.
As this Court has previously noted, decisions of the BZA are “subject to a presumption of validity and are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion .... The reviewing court may not simply substitute its own judgment for that of the BZA.” Millaud v. City of New Orleans, 2013-1152, p. 6 (La.App. 4 Cir. 4/30/14), 137 So.3d 1289, 1292-93, reh’g denied (5/28/14), writ denied, 2014-1350 (La.9/26/14), 149 So.3d 269 (internal quotations and citations omitted).
Our review is thus limited to whether the BZA was arbitrary or capricious, or abused its discretion in granting Osborne a variance, based on its finding that his circumstances satisfied the nine requirements set out in CZO, § 14.6.4.
“The RD-3 Two-Family Residential District is intended to provide for two-family or town house development on smaller lots in older, more densely populated sections of the City....” CZO, § 4.6.1. It provides a minimum lot area |4per dwelling unit of 1,800 square feet for a two-family structure (or 3,600 square feet). CZO, § 14.4.6, Table 4.F.[2] However, the CZO also provides for variances when necessary and appropriate “to afford an applicant relief from the requirements of the letter of the Zoning Ordinance when unnecessary hardship or practical difficulty exists.” CZO, § 14.6.1. Variances are expressly authorized by the CZO “[t]o reduce the requirement for lot area per family.” CZO, § 14.6.2.2.
To grant the variance, the BZA must find that all of the following nine requirements are met:
1. Special conditions and circumstances exist which are peculiar to the *741 land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
2. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
3. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property-
4. Granting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
5. The variance, if granted, will not . alter the essential character of the locality-
6. Strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner, as distinguished from mere inconvenience.
7. The purpose of the variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s).
|b8. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
9. The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public street, or increase the danger of fire, or endanger the public safety.
CZO, § 14.6.4.
The BZA’s staff report provided a point-by-point analysis of the foregoing nine requirements and found them to be met. The BZA agreed.[3] Having reviewed the report, we cannot find that the BZA was arbitrary, capricious, or abused its discretion in adopting the staff report’s recommendation. As previously noted, the report identified 19 other two-family homes on lots of 3,100 square feet in the immediate vicinity, including a dozen on Osborne’s block alone. It also identified two other similar waivers, including a recent waiver authorizing a duplex on a lot of less than 2,400 square feet.
O’Brien contends that the existence of nearby properties with similar variances has no probative value. However, the existence of nearby properties with similar variances is incorporated in the analysis of numbers two, four, and five of the nine requirements of CZO, § 14.6.4. We also agree with the BZA that the variance is not based exclusively on a desire to serve the convenience or profit of | fithe property owner, but rather prevents Osborne from suffering an undue hardship by enforcing an ordinance in a manner that would prevent Osborne from utilizing his property in the same way it has been used for decades, and in the same way a majority of his neighbors utilize their property.
*742 O’Brien also argues that Osborne lost the nonconforming use with the demolition of the building. However, Osborne’s application did not seek an extension of the existing permitted nonconforming use. Rather, Osborne’s application plainly acknowledges that his proposed dwelling is oversized for his lot (i.e., a nonconforming structure in terms of the size of the lot area per family), and seeks a variance from the current CZO for new construction based on meeting the nine requirements set forth • at CZO, § 14.6.4. This argument lacks merit.
We find that the BZA was not arbitrary or capricious, and did not abuse its discretion in granting the variance. We also note that applying the CZO as urged by O’Brien would in essence restrict Osborne from building any dwelling, double, single or otherwise, on his property. Accordingly, the judgment of the district court is hereby affirmed.

. See CZO, § 4.6.7 (2015) and id. at Table 4.F. Table 4.F also requires a 3,600 square-foot lot size for a single-family dwelling, thus a vari-anee would be required for a single dwelling as well.

. This same provision requires a minimum requirement of 3,600 square feet for a single dwelling. See supra, note 1.

. O'Brien improperly argues that the BZA was arbitrary and capricious in adopting the findings in its staff report, based on Ellsworth v. City of New Orleans, 2013-0084 (La.App. 4 Cir. 7/31/13), 120 So.3d 897. The court in Ellsworth acknowledged that a BZA staff report is "preliminary” and “is only one consideration” the Board uses to reach a decision, and therefore the BZA and reviewing tribunals are not bound by the staff report, especially where it is clearly wrong. Id. at p. 9; 120 So.3d at 903. However, nothing in Ells-worth restricts the BZA and reviewing tribunals from adopting a staff report's reasoning and conclusions when it agrees with the report.